Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion Issued June 15,
2006

 

 

 

 

 













 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00378-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



ROBERT H. BISHOP, Appellant

 

V.

 

JERRY WILLIAM SADLER, OMNIBANK, N.A., AND RHONDA LEWIS
HARDAWAY, Appellees

 

 



On Appeal from the 157th District Court

Harris County, Texas

Trial Court Cause No. 2003-36095








 

 

 



MEMORANDUM
OPINION

          Robert
Bishop sued Jerry Sadler, Rhonda Hardaway, and Omnibank, N.A. (collectively
“Omnibank”) for fraud, civil conspiracy, and breach of contract, arising from a
transaction in which Bishop guaranteed a restaurant loan that Omnibank
furnished to a third party.  The trial court
granted summary judgment to Omnibank, from which Bishop appeals.  We conclude that the trial court properly
granted summary judgment on the basis of collateral estoppel and therefore affirm.

Background

          In
1996, Alan and Sally Mallett negotiated to purchase the Café Noche restaurant,
where Alan was a chef, from the restaurant’s owner, Sadler, for $437,500.  Bishop agreed to guarantee a Small Business
Administration loan to the Malletts from Omnibank in the amount of $350,000, in
exchange for a 25% interest in the restaurant. 
Bishop avers in a summary judgment affidavit that Hardaway, the Omnibank
loan officer handling the loan, represented to him that Sally’s uncle would infuse
20% of the total purchase price, or $87,500, toward the purchase price.  During the negotiations, the Malletts also procured
a standby agreement from Sadler, in which he agreed to provide the 20% cash
infusion in the event that Sally’s uncle was unwilling or unable to provide
it.  On the day of the closing, Alan told
Bishop that Sally’s uncle would not provide the money.  Bishop then loaned the Malletts the $87,500
on a short term basis.  The sale closed.  Sadler then provided the cash infusion to Omnibank
pursuant to the standby agreement, and Omnibank repaid Bishop for the short-term
loan.

          Within
eighteen months of the sale, Bishop became dissatisfied with the Malletts’
management of the restaurant, and informed Omnibank that the Malletts were in
non-monetary default on the loan.  Omnibank
refused to call the loan because the Malletts had timely made all loan payments.  Concerned that the bank eventually would call
the loan, Bishop arranged to purchase the note from Omnibank.  He averred that he purchased the note before
the bank formally called on him to honor his guaranty because his attorney had
advised him that doing so would put him in a better position to collect on the
note and would save legal fees.  Bishop then
sued the Malletts for default on the note in state court in December 1998.  He obtained a judgment against the Malletts in
December 2000, and thereafter took over as 100% owner of the restaurant.  Bishop then purchased the assets of the
restaurant at auction.

          In
December 2000, the Malletts filed a Chapter 7 bankruptcy.  Bishop instituted an adversary proceeding,
attempting to prevent the Malletts from discharging the state court judgment
against them by alleging fraud, material misrepresentation, and willful and
malicious injury, among other things.  In
the adversary proceeding, Bishop contended that the Malletts misrepresented to
him that Sally’s uncle would provide a 20% cash infusion knowing that he would not.  Bishop further contended that he would not
have guaranteed the loan if he had known there would be no cash infusion by a family
member.  The bankruptcy court rejected
Bishop’s claims.  Specifically, the
bankruptcy court found that (1) Bishop had failed to prove that he suffered any
damages as a result of any alleged misrepresentations because Omnibank had never
called the note; and (2) Bishop’s own action in purchasing the note from the
bank meant that he would not be liable to Omnibank on the guaranty.  During the pendency of the adversary
proceeding, Bishop instituted this state court proceeding against Omnibank,
asserting the same causes of action he had asserted against the Malletts in the
bankruptcy court.  The trial court
granted summary judgment in favor of all defendants.

Standard of Review

          We
review the trial court’s ruling on a summary judgment motion de novo.  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003). 
We view the evidence in a light most favorable to the non-movant, making
all reasonable inferences and resolving all doubts in the non-movant’s
favor.  Rhone-Poulenc, Inc. v. Steel,
997 S.W.2d 217, 223 (Tex. 1999).  Because
the summary judgment order does not specify the ground or grounds on which the
trial court relied for its ruling, we affirm the summary judgment if any of the summary judgment
grounds is meritorious.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872–73 (Tex. 2000).

          Here,
Omnibank sought a traditional summary judgment as to all of Bishop’s causes of
action.  The movant for a traditional
summary judgment has the burden of showing that no genuine issue of material
fact exists and thus he is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  A defendant moving for summary judgment must
either disprove at least one element of each of the plaintiff’s causes of
action, or plead and conclusively establish each essential element of its
affirmative defense, thereby rebutting the plaintiff’s causes of action.   Cathey
v. Booth, 900 S.W.2d 339, 341 (Tex. 1995). 
Once the movant shows it is entitled to judgment as a matter of law, the
burden shifts to the non-movant to present evidence raising a fact issue to
defeat the motion for summary judgment.  Haight
v. Savoy Apartments, 814 S.W.2d 849, 851 (Tex. App.—Houston [1st Dist.]
1991, writ denied).[1]  

Collateral Estoppel

          Omnibank
contends the trial court properly granted summary judgment because it proved
the affirmative defense of collateral estoppel as a matter of law.  Specifically, it contends that the bankruptcy
court determined that Bishop’s purchase of the note negated the fraud claim against
the Malletts, and thus Bishop is collaterally estopped from asserting identical
facts as the basis for a fraud claim against Omnibank.  Bishop responds that the bankruptcy action
was personal to the Malletts, and thus the bankruptcy court did not consider
whether any of the defendants in this case had committed fraud.[2]  

Defensive collateral estoppel, or
issue preclusion, can prevent relitigation by a plaintiff of issues previously
lost against another defendant.  Johnson
& Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 519
(Tex. 1998).  A
party asserting the bar of collateral estoppel must
establish that (1) the facts sought to be litigated in the present action were
fully and fairly litigated in a previous action, (2) those facts were essential
to the judgment in the previous action, and (3) the parties were cast as
adversaries in the previous action.  John
G. & Marie Stella Kenedy Mem’l Found. v. Dewhurst, 90 S.W.3d 268, 288
(Tex. 2002).[3]  Strict identity of parties is not required; it
is only necessary that the party against whom the doctrine is asserted either was
a party or was in privity with a party in the first action.  Sysco Food Servs., Inc. v. Trapnell,
890 S.W.2d 796, 802 (Tex. 1994).  Bishop
concedes that he was a party to the bankruptcy court action, so here we
consider whether Omnibank satisfies the first and second prongs of collateral
estoppel as a matter of law.

1. Facts Essential to the Judgment

Bishop contends that Omnibank, Hardaway, and
Sadler committed fraud and civil conspiracy by collectively and individually
concealing from him the fact that Sally’s uncle would provide no cash infusion,
and further that he would not have guaranteed the loan if he had known that he
was, in fact, guaranteeing a loan for the full purchase price of the
restaurant.  In the adversary proceeding,
Bishop sought to prevent the Mallets from discharging the state court judgment
against them, alleging essentially the same facts he asserts here—that he would
not have guaranteed the loan if the Mallets had not misrepresented to him that
Sally’s uncle would provide a cash infusion to the loan.  In the bankruptcy court, he further contended
that these allegations, if proved, would afford relief to him pursuant to
sections 523 and 727 of the Bankruptcy Code. 
See 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), (a)(6),
727(a)(2)–(5) (2000).

Under Bankruptcy Code
section 523(a)(2)(A), Bishop had to prove by a preponderance of the evidence that:
(1) the Malletts made a representation, (2) the Malletts knew the
representation was false, (3) the representation was made with the intent to
deceive Bishop, (4) Bishop actually and justifiably relied on the representation,
and (5) Bishop sustained a loss as a proximate result of his reliance.  Id. § 523(a)(2)(A); see In re Acosta,
406 F.3d 367, 372 (5th Cir. 2005).  Under
section 523(a)(6), the Malletts had to act in causing the
willful and malicious injury to Bishop.  11 U.S.C. § 523(a)(6).  It was, thus, essential to the trial court’s
judgment in the adversary proceeding that the court determine whether any
misrepresentation or malicious act that occurred during the underlying
restaurant purchase transaction caused damages to Bishop.  In comparison, to prove his action for fraud against
Omnibank, Bishop must establish: (1) a material misrepresentation was made; (2)
was known to be false when made or was asserted without knowledge of its truth;
(3) was intended to be acted upon; (4) was relied on by Bishop; and (5) caused
injury to Bishop.  Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001).  Bishop’s civil conspiracy claim requires him
to prove that: (1) two or more persons; (2) had an object to be
accomplished; (3) had a meeting of the minds on the object or course of action;
(4) committed one or more unlawful, overt acts; and (5) Bishop was damaged as a
proximate result.  Chon TRI v. J.T.T.,
162 S.W.3d 552, 556 (Tex. 2005).  

In an extensive written
opinion, the bankruptcy court denied Bishop’s claims, concluding, “In light of
the overwhelming testimony inconsistent with Mr. Bishop’s speculation, the
Court concludes that Mr. Bishop has failed to prove the first element of a
false representation or false pretenses.”  Bishop v. Mallett (In re Mallett),
Ch. 7 Case No. 00-41559, Adv. No. 01-3108, slip op. at 9, 18 (Bankr. S.D. Tex.
Nov. 20, 2003).  The court
further found, “[Bishop’s] guaranty never resulted in injury.  The bank never called the guarantee and
therefore, Mr. Bishop never became liable on the note.  Instead, he chose to buy the note and attempt
to collect on it.”  Id.  

Bishop’s bankruptcy court
claims required him to prove that misrepresentations by the Malletts
proximately caused him to close on the loan and suffer damages pursuant to his
guaranty.  Here, Bishop must also prove
that misrepresentations occurring as part of the same underlying transaction
caused damages to him.  The bankruptcy
court already has determined, however, that Bishop cannot recover on the
guaranty for any misrepresentations because Bishop never became liable on the
underlying note.  We conclude that
Omnibank has established that the facts necessary for Bishop to recover in this
action were essential to the judgment in the previous bankruptcy action,
satisfying the second element of collateral estoppel.

2. Facts Fully and Fairly
Litigated

Next, we determine whether the facts
Bishop seeks to litigate here were fully and fairly litigated in the bankruptcy
court.  An issue is “actually litigated” when
it is properly raised, by the pleadings or otherwise, is submitted for
determination, and is determined.  Van
Dyke v. Boswell, O'Toole, Davis & Pickering, 697
S.W.2d 381, 384 (Tex. 1985) (citing Restatement
(Second) of Judgments § 27 cmt. d (1982)).  As noted above, it was incumbent upon the
bankruptcy court to determine whether Bishop suffered damages as a result of a
misrepresentation made to him during the Malletts’ negotiation and purchase of
the restaurant.  See 11 U.S.C. §
523(a)(2)(A), (a)(6).  The bankruptcy
court determined that Bishop did not establish that his injury bore any
relationship to the alleged wrongful acts of the Malletts.  Bishop, Ch. 7 Case No. 00-41559, slip op.
at 18.  The court found that “[t]he bank
never called the guarantee and therefore, Mr. Bishop never became liable on the
note.  Instead, he chose to buy the note
and attempt to collect on it.  His own
actions created his cause of action in the state court proceeding and therefore
created the debt in question.”  Id.  The court concluded that to allow Bishop to
prevent the discharge of the judgment he obtained against the Malletts as a
result of his own decision to purchase the note “would be inequitable, as well
as contrary to the legal principles governing §§ 523 and 727.”  Id. at 24.

In this case, Bishop has the burden to prove
every element of his fraud and civil conspiracy causes of action, including the
element of damages.  The bankruptcy
court’s conclusion that Bishop did not suffer damages was not specific to any
misrepresentation by the Malletts.  Bishop’s
allegation that he would not have guaranteed the note if he had known there
would be no cash infusion by one of the Mallett’s family members is undermined
by his decision to purchase the note and sue on it before the bank called the
note, regardless of whether the misrepresentation regarding the infusion came
from the Malletts, Omnibank, Hardaway, or Sadler.  We conclude that the issue of the cause of
any damages arising from misrepresentations made in the restaurant purchase
transaction that Bishop seeks to litigate in this case was fully and fairly
litigated in the adversary proceeding.

 

 

 

 

Conclusion

          Because the
bankruptcy court concluded that Bishop did not suffer any damages as a result
of any misrepresentations which may have occurred in the restaurant purchase
transaction, due to his intervening purchase of the note, he is collaterally
estopped from recovering in this case. 
Omnibank thus has demonstrated its affirmative defense of collateral
estoppel as a matter of law, and the trial court properly granted summary
judgment.  We therefore affirm
the judgment of the trial court.  All
pending motions are denied as moot.

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Taft,
Higley, and Bland.











[1] Omnibank also moved for a no-evidence summary judgment
on the issue of damages, but we resolve the case under the traditional summary
judgment motion.

 

 





[2] In the trial court, Bishop asserted causes of action
for fraud, civil conspiracy, and breach of contract.  On appeal, Bishop presents no argument on the
breach of contract claim, thus waiving that issue.  San Jacinto River Auth. v. Duke, 783
S.W.2d 209, 209–10 (Tex. 1990).  Accordingly,
we need only consider the applicability of collateral estoppel to his fraud and
conspiracy claims.  

 





[3] When a federal opinion is used to bar a state court
proceeding, we review the claim under federal standards.  See San
Antonio Indep. Sch. Dist. v. McKinney, 936 S.W.2d 279, 281 (Tex. 1996).  Here, because the rule for collateral
estoppel is the same under both state and federal law, we cite to Texas state
cases.  John G. & Marie Stella
Kenedy Mem’l Found. v. Dewhurst, 90 S.W.3d 268, 288 (Tex. 2002).