IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 23, 2007

Charles R. Fulbruge III
Clerk

No. 07-30301
Summary Calendar

In The Matter Of: GREGORY NEAL DORSEY

Debtor

-----------------------------------------------

FRIENDLY FINANCE SERVICE - EASTGATE INC.

Appellant

v.

GREGORY NEAL DORSEY

Appellee

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:07-CV-1

Before JOLLY, DENNIS, and PRADO, Circuit Judges.

PER CURIAM:

Friendly Finance Service ("FFS") appeals the district court's judgment affirming the judgment of the bankruptcy court. The bankruptcy court dismissed FFS's adversary complaint against the debtor, Gregory Neal Dorsey, in which FFS sought to deny the debtor's discharge under 11 U.S.C. § 727 or to

hold the debtor's debt to it non-dischargeable under 11 U.S.C. § 523. The bankruptcy court also found that FFS and its affiliates had engaged in a continuing abuse of the bankruptcy process and ordered the Clerk of the Bankruptcy Court for the Western District of Louisiana to refuse the filing of any complaint under §§ 523 and 727 by FFS and its affiliates in Chapter 7 cases, unless leave of court is obtained prior to filing. The district court affirmed the judgment of the bankruptcy court. FFS filed a timely notice of appeal. For the reasons that follow, we AFFIRM in part, VACATE in part, and REMAND for further proceedings.

I.

In May 2003, the debtor, Gregory Neal Dorsey, and his wife borrowed $3,000 from FFS, payable in 36 monthly installments of $154.93. The collateral described in the security agreement consisted of a 1997 motorcycle, two shotguns, one pistol, a television, a VCR, and a riding lawnmower.

On June 18, 2004, Dorsey and his wife filed a Chapter 13 bankruptcy petition. The Chapter 13 plan dated June 17, 2004, listed FFS's claim as a secured claim and provided for 54 monthly payments of $82.00. The plan provided further that the debtors "shall pay to the Trustee any income tax refunds," less earned income credit, for tax years 2004-2006. The motorcycle pledged as part of the collateral for the FFS loan is not listed in the schedule of personal property in the debtors' Chapter 13 schedules.

On October 28, 2005, the debtors moved to modify their Chapter 13 plan to provide for the surrender of the motorcycle to FFS in full satisfaction of the debt owed to FFS, and the surrender of a 2000 Chrysler automobile to Regions Bank in full satisfaction of their debt to that lender. The bankruptcy court confirmed the modified plan on December 9, 2005. The order confirming the modified plan reiterated the requirement that the debtors tender to the trustee any tax refunds for tax years 2004-2006, less earned income credit.

On January 17, 2006, the debtors moved to convert their Chapter 13 bankruptcy proceeding to a Chapter 7 bankruptcy. See 11 U.S.C. § 1307(a) (providing that the debtor may convert a case under Chapter 13 to a case under Chapter 7 "at any time"). The bankruptcy court granted the motion to convert on January 20, 2006.

The Chapter 7 schedules filed by the debtors on January 19, 2006 list FFS as an unsecured creditor with a non-priority claim of $3,554 for a "signature loan." The motorcycle is not listed as an asset on the schedule of personal property. However, the 2000 Chrysler automobile that was to be surrendered to Regions Bank according to the modified Chapter 13 plan is listed as an asset on the personal property schedule.

FFS was the only creditor present at the first meeting of creditors following the conversion to Chapter 7. At that meeting, on March 13, 2006, FFS's counsel asked the debtor if he still had the motorcycle, and the debtor said that he did. When asked about the three guns pledged as collateral to FFS, the debtor testified that he no longer had the Winchester 12-gauge single-barrel shotgun, and that it was his father's gun; that the 1912 Edison shotgun was his grandfather's gun; and that he still had the .32 automatic pistol. He testified that he no longer had the television set and the riding lawnmower, but that he still had the VCR. The debtor testified that he got a $3,600 tax refund for the 2004 tax year and paid some bills with it. He testified that he had received a $5,000 tax refund for the 2005 tax year and used it to pay bills, buy clothes for his children, and repair a truck.

On May 18, 2006, FFS filed an adversary complaint. FFS alleged that because the debtor did not own the shotguns given as collateral, the loan was obtained by fraud and false pretenses and thus the debt was not dischargeable under 11 U.S.C. § 523. FFS also alleged that the debtors should be denied a discharge under 11 U.S.C. § 727 because their failure to turn over to the trustee

the $5,000 tax refund they received in 2006 for tax year 2005, as required by their Chapter 13 plan, and their representation, under oath, in their Chapter 7 schedules, that they had no contingent and unliquidated claims, including tax refunds, amounted to false oaths, transferring or concealing assets with intent to hinder, delay, or defraud creditors, failure to obey a lawful order of the court, and failure to explain their loss of assets to meet liabilities.

At the trial of the adversary proceeding on December 7, 2006, the debtor testified that he received the tax refund for tax year 2005 in 2006, after the conversion of the case to a Chapter 7 proceeding. He also testified that he possessed only one gun, a 1912 Winchester single-barrel shotgun, that the gun had belonged to his uncle, who had died when he was a teenager, and that his father gave him the gun "to keep."

In a ruling from the bench, the bankruptcy court began by rejecting FFS's claim of nondischargeability under § 523 on the ground that the debtor did not give a financial statement in connection with any loan application. Next, the bankruptcy court held that FFS had no standing to object to dischargeability under § 523 or discharge under § 727, because the confirmation of the modified Chapter 13 plan, pursuant to which the debtor was to surrender the motorcycle to FFS in full satisfaction of the debt, was binding as to both the debtor and FFS. The court stated that at the time the case was converted to a case under Chapter 7, FFS had no debt and no claim against the debtor, secured, unsecured, or otherwise. The bankruptcy court found that, assuming FFS had standing, the debtor did not intend to deceive FFS with respect to the guns pledged as collateral.

Finally, the bankruptcy court found that FFS's complaint was abusive, because FFS lacked standing to file the complaint inasmuch as it had no claim against the debtor as a result of the order confirming the modified plan. The court observed that FFS's counsel made little, if any, effort to review the

bankruptcy court record and that the complaint "is only another in a chain of abusive complaints filed by this lender." The court noted that it had repeatedly cautioned FFS and its counsel about deficiencies in its pleadings. Furthermore, despite having been cautioned in the past regarding reaffirmation agreements, the court noted that FFS had attempted to enter into a reaffirmation agreement with the debtor in this case. Based on those findings, the court enjoined FFS from filing any complaints objecting to discharge or dischargeability in Chapter 7 cases in the Monroe and Alexandria Divisions of the Western District of Louisiana without prior leave of court.

FFS appealed, and the district court affirmed the judgment of the bankruptcy court. The district court noted that it did not reach the question of standing because the bankruptcy court had ruled, in the alternative, that even if FFS had standing to object, it would deny FFS's objections to dischargeability. Construing FFS's objection to dischargeability as one under § 523(a)(2)(B), the district court affirmed on the grounds that (1) the debtor did not present a written statement about his financial condition, and (2) the bankruptcy court did not clearly err in finding that the debtor did not intend to deceive FFS about the guns pledged as collateral for the loan. The district court held that the bankruptcy court had implicitly found that the debtor did not knowingly and fraudulently conceal the tax refund, and that FFS had not offered any evidence of knowing and fraudulent concealment. It therefore affirmed the denial of FFS's objection to discharge under 11 U.S.C. § 727. The district court affirmed the injunction requiring FFS to obtain bankruptcy court approval before filing complaints objecting to discharge and dischargeability, holding that it is a proportionate response to FFS's abuse of the bankruptcy process. FFS timely appealed. The debtor did not file a brief in the district court or in this court.

II.

FFS argues that the bankruptcy court erred by holding that it lacked standing, by denying its objections to dischargeability and discharge, and by enjoining it from filing complaints objecting to discharge and dischargeability in Chapter 7 cases without prior approval of the bankruptcy court. We review the bankruptcy court's findings of fact for clear error, its conclusions of law de novo, and its imposition of sanctions for abuse of discretion. Coie v. Sadkin (Matter of Sadkin), 36 F.3d 473, 475 (5th Cir. 1994). We turn first to the matter of standing.

A.

The bankruptcy court held that FFS lacked standing to file a complaint objecting to discharge and dischargeability based on the confirmation of the debtor's modified Chapter 13 plan, in which the debtor was to surrender the motorcycle to FFS in full satisfaction of his debt. The bankruptcy court held that, when the case was converted to a Chapter 7 case after the modified Chapter 13 plan was approved, FFS had no debt and no claim against the debtors.

The Bankruptcy Code provides that "[t]he provisions of a confirmed [Chapter 13] plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). "Section 1327(a) generally codifies the doctrine of res judicata with respect to confirmed Chapter 13 plans." Hutchinson v. Delaware Savings Bank FSB, 410 F.Supp.2d 374, 278 (D.N.J. 2006). Thus an order confirming a Chapter 13 plan "is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." Id. (quoting In re Szostek, 886 F.2d 1405, 1408 (3d Cir. 1989)). It would be inequitable, however, to bind a creditor to a Chapter 13 plan where the debtor has failed to fulfill his obligations under the plan or where the debtor has abandoned the plan by exercising his right to convert from

Chapter 13 to Chapter 7. In re Shaffer, 48 B.R. 952, 955-58 (Bankr. N.D. Ohio 1985).

As we have noted, the modified Chapter 13 plan in this case, which provided that the debtors would surrender the motorcycle to FFS in full satisfaction of their debt, was confirmed on December 9, 2005. The debtors converted the case to one under Chapter 7 on January 20, 2006. On March 13, 2006, at the first meeting of creditors following the conversion, the debtor testified that he still had the motorcycle. Thus, the debtor failed to fulfill his obligation under the modified Chapter 13 plan to surrender the motorcycle to FFS. Furthermore, the debtor freely abandoned the Chapter 13 plan when he converted the case to one under Chapter 7. Moreover, the debtor acknowledged owing a debt to FFS in the Chapter 7 schedules, which listed FFS as an unsecured creditor holding a claim of $3,554. Under these circumstances, it would be inequitable to bind FFS to the terms of the modified Chapter 13 plan. It therefore follows that the bankruptcy court erred by holding that FFS lacked standing to file an adversary complaint objecting to discharge and dischargeability. We now turn to address the merits of FFS's objections and the sanctions imposed upon FFS by the bankruptcy court.

B.

FFS argues that the bankruptcy court erred in rejecting its claim under 11 U.S.C. § 523 because the debtor's grant of a security interest in a gun that the debtor did not own is false pretenses founded on a false statement in writing for purposes of § 523(a)(2)(A) and (B). Section 523(a)(2)(A) provides that a debt is non-dischargeable if it is "for money, property, services, or an extension, renewal, or refinancing of credit," to the extent that it was "obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(B) provides that a debt is non-dischargeable to the extent that it is obtained by the use of a written statement "(i) that is materially false; (ii)

respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such … credit reasonably relied; and (iv) that the debtor caused to be made or published with the intent to deceive." 11 U.S.C. § 523(a)(2)(B).

The bankruptcy court held that, assuming FFS had standing, the debtor did not intend to deceive FFS with respect to his lack of ownership of the guns, because they were in his possession at the time that the loan was made. A creditor must prove the debtor's intent to deceive in order to obtain a non-dischargeability judgment under both § 523(a)(2)(A) and § 523(a)(2)(B). See General Electric Capital Corp. v. Acosta (In re Acosta), 406 F.3d 367, 372-74 (5th Cir. 2005). The bankruptcy court also rejected FFS's claim under § 523 on the ground that the debtor did not make a written statement respecting his financial condition, as required under § 523(a)(2)(B).

Although the debtor's testimony with respect to the guns at the creditors' meeting is inconsistent with his testimony at trial, we cannot say with firm conviction that the bankruptcy court clearly erred in finding that the debtor did not intend to deceive FFS with respect to the guns. We therefore conclude that the bankruptcy court did not err in denying FFS's objection to dischargeability of the debt under § 523(a)(2).

C.

FFS's objection to discharge under 11 U.S.C. § 727 was based on (1) the debtor's failure to turn over to the trustee the $5,000 tax refund for tax year 2005, and (2) the debtor's failure to disclose the tax refund on his Chapter 7 schedules, which required him to disclose the estimated value of contingent and unliquidated claims including tax refunds. The bankruptcy court held that FFS, as a non-creditor, lacked standing and therefore did not consider FFS's arguments. The district court held that the bankruptcy court "implicitly found" that the debtor did not knowingly and fraudulently conceal the refund and that

he simply misunderstood his obligation to amend his disclosures. The only basis we can discern for the bankruptcy court's ruling on the § 727 objection, however, is its determination that FFS lacked standing to object. We therefore VACATE the bankruptcy court's judgment insofar as it dismissed FFS's claim under § 727, and REMAND the case to the district court with instructions to remand the case to the bankruptcy court for further proceedings with respect to this claim.

We note, however, that, just as FFS is no longer bound by the terms of the Chapter 13 plan, neither is the debtor, at least as far as FFS is concerned. Following conversion of the case to one under Chapter 7, the debtor no longer had any obligation to turn over the tax refund to the trustee under the terms of the Chapter 13 plan. The debtor testified that he received the tax refund after the conversion, and FFS presented no evidence to contradict that testimony. Accordingly, the debtor's failure to turn over the tax refund to the Chapter 13 trustee will not support a denial of discharge under § 727.

## D.

Finally, we turn to the bankruptcy court's injunction prohibiting FFS from filing future complaints objecting to discharge or dischargeability without prior court approval. Although the bankruptcy court referred to a pattern of abuse by FFS in other cases, its finding of abuse in this case appears to have been based primarily on its conclusion that FFS lacked standing to file the adversary proceeding. Because the bankruptcy court erred by holding that FFS lacked standing, we VACATE the injunction and REMAND the case to the district court with instructions to remand the case to the bankruptcy court for reconsideration of the propriety of its injunction in the light of this opinion.

## III.

To sum up, the bankruptcy court erred by holding that FFS lacked standing to file the adversary proceeding objecting to discharge and dischargeability. The bankruptcy court's finding that the debtor did not intend

to deceive FFS about his ownership of guns pledged as collateral is not clearly erroneous and consequently the bankruptcy court did not err by denying FFS's objection to dischargeability under 11 U.S.C. § 523(a)(2). We therefore AFFIRM the judgment of the district court insofar as it affirmed the bankruptcy court's denial of FFS's objection to dischargeability under § 523(a)(2).

Because the bankruptcy court erred in concluding that FFS lacked standing to object to discharge under § 727 and made no findings with respect to FFS's § 727 claim, and because its injunction prohibiting FFS and its affiliates from filing complaints objecting to discharge and dischargeability was based in large part on its conclusion that FFS lacked standing to file the complaint in this case, we VACATE the judgment of the district court affirming the bankruptcy court's injunction and its ruling on the § 727 claim, and REMAND the case to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion.

AFFIRMED in part; VACATED in part; and REMANDED.