# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-51045

United States Court of Appeals
Fifth Circuit

**FILED**
September 1, 2016

Lyle W. Cayce
Clerk

In the Matter of:  JERRY W. SCARBROUGH,

Debtor

--------------------------------------------------------

JERRY W. SCARBROUGH,

Appellant

v.

HELEN PURSER; JOANN M. PURSER; SUE E. PURSER; GARY W. PURSER, JR.; ELIZABETH TIPTON,

Appellees

Appeal from the United States District Court
for the Western District of Texas

Before STEWART, Chief Judge, and CLEMENT and HAYNES, Circuit Judges.

Carl E. Stewart, Chief Judge:

Debtor-Appellant Jerry W. Scarbrough ("Scarbrough") appeals the district court's order affirming a bankruptcy court judgment that declared nondischargeable a Texas state court judgment against him.  This case involves several familial disputes stemming from an employment lawsuit, an

No. 15-51045

alleged extramarital affair, the death of the family patriarch, and secret recordings.  We AFFIRM.

I.

Beginning in 2010, Scarbrough represented Melissa Deaton ("Deaton") in a Texas state court proceeding brought by a third party against Plaintiffs-Appellees Helen Purser, JoAnn Purser, Sue Purser, Gary Purser, Jr. and Elizabeth Tipton (collectively, the "Appellees").  During the course of this representation, Appellees joined Scarbrough as a third-party defendant with Deaton and another party, Denise Steele ("Steele").  Appellees alleged that Deaton and Steele were attempting to secure financial gain from Gary Purser as his health declined.  During trial, Appellees requested all discoverable evidence or known witness statements relating to the state court litigation.  Scarbrough prepared responses to Appellees initial discovery requests, stating that Deaton did not possess any recorded statements involving the parties in the lawsuit.  Months later, however, Deaton provided Scarbrough with "Secret Recordings" that Scarbrough had duplicated by Shawn Richeson ("Richeson").  Scarbrough failed to disclose the "Secret Recordings" to the court or Appellees but instead gave the recordings back to Deaton.  The recordings contained information alleging that Deaton and Steele sought to take advantage of Gary Purser financially.  Appellees had not become aware of the Secret Recordings and had not retained possession of them until Richeson produced the recordings to a friend of the Purser family.  The state court sanctioned Scarbrough for his intentional withholding of the recordings among other conduct.  Scarbrough's conduct is alleged as follows.

Between 2010 and 2011, Scarbrough conspired with Deaton to file a police report alleging that JoAnn Purser called Deaton and threatened to kill her; Scarbrough filed a motion to appoint a guardian ad litem for Gary Purser;

No. 15-51045

and reported to the Texas Department of Adult Protective Services that Appellees were committing elder abuse against Gary Purser.  Following Gary Purser's death in 2011, Scarbrough attempted to obtain an autopsy report and reported to the funeral home, local justices of the peace, two local police departments and the Texas Rangers that Appellees likely killed Gary Purser by overdosing him on prescription drugs.  Also in 2011, Scarbrough uploaded a video on YouTube of multiple altercations that occurred amongst Appellees, Deaton, and other nonparties to this suit where profanity and physical altercations transpired.  Scarbrough superimposed text across the video images specifically implicating JoAnn Purser, who was then running for a position with the Killeen school board.  The text included the phrases "VOTED OUT" and "JoAnn Purser, running for Killeen school board."

Appellees obtained several orders in Texas state court against Scarbrough for fraud, civil conspiracy, and defamation.  Scarbrough filed for Chapter 7 Bankruptcy in June 2012.  On September 10, 2012, while the underlying suit was ongoing, Appellees brought an adversary proceeding in bankruptcy court seeking a nondischargeability determination against Scarbrough for multiple debts stemming from the state court judgment under 11 U.S.C. 523(a)(2), (4) and (6).  Specifically, Appellees sought nondischargeability for, *inter alia*, debts (1) for money and property obtained by false pretenses, a false representation, or actual fraud and (2) due to Scarbrough causing willful and malicious injury to Appellees.  Appellees filed an Amended Complaint on November 19, 2012.  Scarbrough filed a motion to dismiss Appellees' Amended Complaint on November 21, 2012, for failure to state a claim.

After granting partial summary judgment and conducting a nine-day trial on the merits, the bankruptcy court concluded that (1) the judgments

No. 15-51045

against Scarbrough for defamation and for fraud were each nondischargeable under the willful and malicious injury discharge exception in § 523(a)(6); (2) the judgment against Scarbrough for fraud due to Scarbrough's failure to disclose, and fraud by misrepresentation, was nondischargeable under the "false pretenses, false representation, or actual fraud" discharge exception in § 523(a)(2)(A); and (3) Scarbrough's privilege and First Amendment assertions as affirmative defenses were collaterally estopped, as they were "actually litigated" in state court.  Scarbrough appealed the bankruptcy court decision. The district court affirmed and Scarbrough now appeals to this Court.

## II.

Scarbrough does not argue that the bankruptcy court misunderstood or misapplied governing bankruptcy law, but that the court erred in granting summary judgment and clearly erred in several of its factual findings.  We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law that the district court did, reviewing findings of fact for clear error and conclusions of law *de novo*. *See In re Acosta*, 406 F.3d 367, 372 (5th Cir. 2005); *In re Gamble*, 143 F.3d 223, 225 (5th Cir. 1998).  A finding of fact is clearly erroneous only if "on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed."  *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003).  We review a partial grant of summary judgment *de novo* and apply the same standards used by the district court.  *In re Criswell*, 102 F.3d 1411, 1414 (5th Cir. 1997).

## III.

## A.

Scarbrough first argues that Appellees' late-filed Amended Complaint addressing sanction orders was time-barred.  A creditor seeking to have a debt

4

deemed nondischargeable must assert the claim in a timely manner. *See In re Dunlap*, 217 F.3d 311, 314 (5th Cir. 2000); *see also In re Meyer*, 120 F.3d 66, 68 (7th Cir. 1997). The deadline for filing a dischargeability complaint is inflexible. *Id.* (stating that Bankruptcy Rule 4007(c) imposes a firm 60-day deadline (after the first creditors' meeting) for creditors to request a nondischargeability determination for debts under §§ 532(a)(2) and (a)(6)). Notwithstanding, a party's amended complaint may determine dischargeability if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." Fed. R. Civ. P. 15(c)(1); Fed. R. Bank. P. 7015.

Scarbrough complains that the bankruptcy court erred when it permitted Appellees to file an amended complaint after the expiration of the 60-day filing period set forth in Bankruptcy Rule 4007(c). Scarbrough argues that Appellees' original complaint did not assert claims for nondischargeability of sanction debts as specified in the Amended Complaint, and that the Amended Complaint did not relate back to the original complaint. We disagree.

The relation back doctrine is critical here because it determines whether Appellees' Amended Complaint must be dismissed as futile. *See Baker v. Carter*, No. 4:12-CV-478, 2013 WL 1196106, at *7 (E.D. Tex. Mar. 22, 2013). If so, Appellees have no claim for nondischargeability of the sanction debt. We construe Appellees' original complaint to assert that Debtor "alone or in concert with others, obtained monies through false pretenses, a false representation or actual fraud; committed fraud and defalcation while acting in a fiduciary capacity, and committed a willful and malicious injury." Appellees attached and incorporated by reference their state court pleading. While Appellees' initial complaint did not mention the sanctions orders, the conduct that

No. 15-51045

Appellees identify in the Amended Complaint directly emanates from the conduct for which the court sanctioned Scarbrough and from the conduct specified in Appellees state court pleading: (1) Scarbrough engaged in conduct that was defamation *per se,* including accusing Appellees of murder; (2) Scarbrough failed to disclose recordings that proved Appellees' allegations; and (3) Scarbrough made numerous false representations to the court and third parties pertaining to Appellees.

The Amended Complaint did not allege new grounds for finding Scarbrough's debt nondischargeable, but merely added specific facts consistent with the nondischargeability claim advanced in their original complaint. *See In re Schwager,* 121 F.3d 177, 186 (5th Cir. 1997) (finding no abuse of discretion where an amended complaint made more specific that which had already been alleged because the amendments related back to the original complaint); s*ee also Baker,* 2013 WL 1196106, at *8 ("This standard is measured not by 'the caption given a particular cause of action, but . . . the underlying facts upon which the cause of action is based.'") (quoting *Cardiovascular Surgery of Alexandria, LLC v. Kerry,* No. CIV.A. 10-1003, 2011 WL 672244, at *3 (W.D. La. Feb. 17, 2011)).  The bankruptcy court held, and we agree, that Appellees raised the issue of sanctions based on allegations of fraud and causing willful and malicious injury.  Scarbrough had ample notice of these claims because Appellees pleaded §§ 523(a)(2) and (a)(6) as a basis for nondischargeability.  Accordingly, Scarbrough's sanctionable state court conduct relates back to the conduct alleged in the original complaint.

B.

Scarbrough next argues that the district court erred in granting partial summary judgment on the issue of sanction orders based on collateral estoppel. This argument lacks merit.  The sanction debt in the judgment, which

incorporates the sanction orders, meets the requirements of nondischargeability under § 523(a)(6) for committing willful and malicious injury.

Under the Bankruptcy Code, a debtor may not be discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Here, the state court signed sanction orders for conduct ranging from "intentional concealment and deception" regarding the existence of audio recordings and willful violation of various court orders to Scarbrough's willful filing of frivolous motions to harass Appellees. We find this conduct sufficient to have met § 523(a)(6)'s standard. *See In re Keaty*, 397 F.3d 264, 273 (5th Cir. 2005); *see also, In re Dahlstrom*, 129 B.R. 240, 246 (Bankr. D. Utah 1991) ("[A]ll debts that arise from willful and malicious acts are nondischargeable."). The state court likewise held Scarbrough in civil and criminal contempt for engaging in discovery abuse that was "active[ly] decept[ive]." *In re Williams*, 337 F.3d 504, 512 (5th Cir. 2003) ("Failure to obey a court order constitutes willful and malicious conduct. . . .").

Scarbrough contends that, even if Appellees show that he intentionally committed an act that harmed Appellees, Appellees fail to establish that this harm was intended. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998). The willful and malicious injury that occurred here is evidenced by both (1) an objective substantial certainty of harm and (2) a subjective motive to cause harm. *In re Davenport*, 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006). The record reflects that Scarbrough intentionally concealed evidence when failing to disclose the Secret Recordings to the court after multiple discovery requests were made, willfully violated various court orders, and filed frivolous motions before the court; Scarbrough's "scorched earth" strategy impacted the litigation strategy of Appellees. The record reflects clear and specific findings as to

No. 15-51045

Scarbrough's state of mind.    We find no error in the lower court's determination.

## IV.

## A.

Scarbrough next contends that the bankruptcy court erred in granting partial summary judgment on Appellees' claims under § 523(a)(2) for fraud. Again, we disagree.

First, Scarbrough invokes error in the court's collateral estoppel finding, which bars re-litigation of any ultimate issue of fact actually litigated and essential to the judgment.  *See In re Gober*, 100 F.3d 1195, 1201 (5th Cir. 1996). Prior to the U.S. Supreme Court's ruling in *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581 (2016), this Circuit required that a finding of fraud under § 523(a)(2) show: (1) that the debtor made a representation; (2) that the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance. [1]  *In re Acosta*, 406 F.3d at 372.  The bankruptcy court granted partial summary judgment for Appellees on the fraud elements that the state court jury found and thereafter conducted a bench trial rendering judgment on the issues the state court jury had not considered— fraudulent intent and justifiable reliance.  Scarbrough asserts that once the bankruptcy court concluded that the two factual issues not considered by the jury had to be tried, all factual issues related to the fraud claim must be re-

---

[1] As this Court recognized in *In re Ritz*, No. 14-20526, 2016 WL 4253552, at *3 n.3 (5th Cir. Aug. 10, 2016), "[t]o the extent that *In re Acosta*, . . . and other prior Fifth Circuit cases required that a debtor make a representation in order for a debt to be nondischargeable under § 523(a)(2)(A), those cases are effectively overruled by the Supreme Court's decision in [*Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016)]."

tried.  Not so.  The bankruptcy court explicitly did not re-litigate the essential elements of the fraud claim found by the jury.  *See In re Gober*, 100 F.3d at 1201.  It solely addressed issues not yet decided.  *See In re Schwager*, 121 F.3d at 184. Scarbrough provides no legal support for an argument to the contrary.

Next, Scarbrough contends that the jury's findings do not meet § 523(a)'s requirements because the jury was not required to find "that *anyone* received a benefit." This argument also fails.  A creditor is not required to show that the debtor received a direct benefit as a prerequisite for a determination that a fraud debt is nondischargeable.  *See In re M.M. Winkler Assocs.*, 239 F.3d 746, 748, 750–52 (5th Cir. 2001).

### B.

Scarbrough next argues that the bankruptcy court erred in finding the fraud judgment to be nondischargeable under §§ 523(a)(6) for willful and malicious conduct, and (a)(2) for fraud by false representations.  We do not rehash Scarbrough's willful and malicious conduct, as the same acts were applicable to Scarbrough's nondischargeability finding for the state court sanctions.   However, we add that by making groundless, fraudulent, and harassing claims in the state court action in an attempt to demand three million dollars payment, Scarbrough, along with his co-defendants in the state court proceedings, engaged in willful and malicious conduct.  *See In re Shcolnik*, 670 F.3d 624, 626, 629 (5th Cir. 2012) (concluding on summary judgment, but without deciding whether debtor's actions fell under § 523(a)(6), that the attempt to obtain one million dollars by threatening exposure of alleged illegal activity intended to cause injury through harassment and baseless litigation); *In re Bain*, 436 B.R. 918, 924 (Bankr. S.D. Tex. 2010).

We also conclude that Appellees met their burden under § 523(a)(2)(A). Appellees' fraud claim is rooted in Scarbrough's intentional failure to disclose

the Secret Recordings and falsehoods disclosed about Appellees. Appellees justifiably relied on Scarbrough's conduct in the underlying lawsuit, which resulted in Scarbrough's co-conspirators obtaining money and jewelry through the fraud. *In re Acosta*, 406 F.3d at 372 ("[A] debt will not be discharged in bankruptcy if it is 'for money, property, [or] services,' . . . [if] it was 'obtained by false pretenses, a false representation, or actual fraud.'" (quoting 11 U.S.C. § 523(a)(2)(A))).

Scarbrough contends that because he did not receive money directly from Appellees, prong five of the fraud inquiry has not been met. "We . . . reject debtor's implication that a debt is nondischargeable under section 523(a)(2)(A) only when the creditor proves that the debtor directly and personally received every dollar lost by the creditor." *In re Bain*, 436 B.R. at 922 (quoting *In re Brady*, 101 F.3d 1165, 1172 (6th Cir.1996)). A debt may be nondischargeable under § 523(a)(2)(A) even if the debtor obtained only an indirect benefit as a result of the fraud. *In re M.M. Winkler Assocs.*, 239 F.3d at 750 ("[E]ven an indirect benefit is sufficient."). Helen Purser testified that both money and jewelry were given to third parties as a result of Scarbrough and his co-defendants' conduct, and the bankruptcy court gave great weight to Helen Purser's testimony. *In re Acosta*, 406 F.3d at 372 ("When the bankruptcy court bases its findings on credibility determinations, this Court gives 'due regard' to the opportunity of the bankruptcy court to judge the credibility of the witnesses firsthand." (quoting *In re Webb*, 954 F.2d 1102, 1104 (5th Cir. 1992))). The bankruptcy court observed Helen Purser and other witnesses, and is "in a far superior position to gauge [Scarbrough's] credibility than this Court is in by merely reading the transcripts." *Id.* Finding no clear error in the court's ruling and that the bankruptcy court's account of the evidence is plausible in light of the record viewed as a whole, we will not reverse.

10

No. 15-51045

V.

Scarbrough next argues that the bankruptcy court erred in finding the defamation judgment nondischargeable under § 523(a)(6) for willful and malicious conduct. The bankruptcy court affirmed the state court's finding that Scarbrough engaged in defamation and defamation per se. "Defamation is a false statement about a person, published to a third party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l Inc. v. Roehrs*, 470 F.3d 1150, 1161 (5th Cir. 2006) (citation omitted). In cases of defamation per se, the statements at issue are so obviously hurtful that they require no proof of injury to be actionable. *Id.*

Several incidents lead this court to affirm the lower court's judgment. Among them was Scarbrough's (1) false reporting to Adult Protective Services; (2) posting a video of a personal family conflict on YouTube in an attempt to hinder JoAnn Purser's bid for a school board seat; and (3) conspiring to make false statements and reports that JoAnn Purser threatened to kill others and that Appellees consumed illegal drugs. *See, e.g.*, *French v. French*, 385 S.W.3d 61, 72 (Tex. App.—Waco 2012, pet. denied) ("A statement that falsely charges a person with the commission of a crime is defamatory per se." (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984))). We find no error in the lower court's ruling.

VI.

Scarbrough contends that the bankruptcy court's application of collateral estoppel to the jury's damages findings for both fraud and defamation were improper. He argues that because Appellees' claims for fraud and defamation were based on multiple acts committed by Scarbrough, the bankruptcy court's finding that collateral estoppel applies to the jury's determination of damages is in error. We disagree. Scarbrough highlights that Appellees alleged that

11

No. 15-51045

he engaged in fraud by, *inter alia*, (1) making false and embarrassing demands and allegations related to the state court action and (2) making harassing claims in the state court action in order to coerce a multi-million dollar settlement.  Appellees' defamation claim stemmed from Scarbrough, *inter alia*, (1) conspiring to make false statements that JoAnn Purser was threatening to kill Deaton; (2) false statements and reports that Appellees consumed illegal drugs; and (3) posting slanderous videos about JoAnn Purser online.  We have held that "[where] the judgment of the court of first instance was based on a determination of two issues, either of which standing independently would be sufficient to support the result, and the appellate court upholds both of these determinations as sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both determinations." *In re Horton*, 85 F.3d 625, at *4 (5th Cir. 1996).  Here, the jury's findings of damages for defamation and fraud, each "independently sufficient to support the judgment," are binding and "preclude [re-litigation] in a subsequent case which involves only one of the independently sufficient grounds." *Id.*  We find no error with the lower court's ruling.

## VII.

Finally, Scarbrough argues that the court erred in finding his First Amendment and privilege affirmative defenses were precluded by collateral estoppel.  We reiterate the bankruptcy court's finding.  Under Texas law, "collateral estoppel bars re-litigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit." *In re Schwager*, 121 F.3d at 181 (quotations omitted).  To be "actually litigated," the issue must have been "raised, contested by the parties, submitted for determination by the court, and determined." *Keaty*, 397 F.3d at 272.  Each of the aforementioned

12

No. 15-51045

issues were raised and decided below.    Scarbrough's claims are dismissed as meritless.

## VIII.

For the reasons stated herein, we AFFIRM.