# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-10469

United States Court of Appeals
Fifth Circuit

**FILED**

October 23, 2020

Lyle W. Cayce
Clerk

In the Matter of: LLOYD EUGENE WARD,

     Debtor

--------------------------------------

ROBERT YAQUINTO, Chapter 7 Trustee for Bankruptcy Estate of Lloyd Ward; MICHAEL FRANK; DANA BLOCK; GREG BURKE; JESSICA CASEY; VICTORIA CASTILLO; JEREMY COZART; JOHNNY KEEL; VALLERY MANN; JO MINAYA; BRIAN PARKER; CHRISTOPHER PITRE; TIM CARR; CODDI DEAN; JOHN NELSON,

     Appellees,

v.

LLOYD EUGENE WARD,

     Appellant.

Appeal from the United States District Court
for the Northern District of Texas

Before OWEN, Chief Judge, and CLEMENT and HO, Circuit Judges.

PRISCILLA R. OWEN, Chief Judge:

The issues in this appeal are whether the Appellees timely filed a complaint seeking denial of Lloyd Eugene Ward's discharge in bankruptcy pursuant to 11 U.S.C. § 727(a)(4)(A) and (a)(5), and, if the complaint was timely, as the district court held, whether the bankruptcy court erred in denying the discharge. We affirm.

No. 18-10469

**I**

The Appellees, other than the Chapter 7 trustee Robert Yaquinto, obtained a $782,838.25 judgment against Lloyd Eugene Ward, an attorney, and Lloyd Ward, P.C.  Those creditors filed suit in state court to collect on the judgment.  Ward then filed a petition for relief under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas.

That court issued a notice (Eastern District Notice) on May 5, 2014, that scheduled the initial meeting of creditors (a § 341(a) meeting[1]) for May 30, 2014, and set July 29, 2014, as the deadline to object to Ward's discharge petition or to challenge the dischargeability of certain debts.  However, before May 30 arrived, an agreed motion to transfer the bankruptcy proceedings to the Northern District was filed on May 13, 2014.  The initial creditors' meeting that had been noticed for May 30 did not occur.  On June 5, 2014, Ward's case was transferred to the Bankruptcy Court for the Northern District of Texas.  The Bankruptcy Court for the Northern District (Bankruptcy Court) subsequently entered its own notice (Northern District Notice), which identified July 22, 2014, as the date of the initial § 341(a) meeting of creditors, and September 22, 2014, as the date for filing objections to Ward's discharge.  Ward did not object to the Northern District Notice or the new discharge date.

On August 27, 2014, Ward's judgment creditors filed a motion for an extension of the deadline to file objections (Motion for an Extension).  Yaquinto, the trustee of Ward's bankruptcy estate, joined in this motion.  Ward opposed the Motion for an Extension, arguing it was untimely under Federal Rules of Bankruptcy Procedure 4004(a) and 4007(c) because it was filed more than sixty

---

[1] *See* 11 U.S.C. § 341(a) ("Within a reasonable time after the order for relief in a case under this title, the United States trustee shall convene and preside at a meeting of creditors.").

2

No. 18-10469

days after the May 30, 2014 date set for the § 341(a) meeting in the Eastern District Notice.  The Bankruptcy Court granted the Motion for an Extension. The Bankruptcy Court subsequently granted two more opposed motions for extensions, ultimately establishing May 1, 2015, as the final deadline for filing objections.  It is clear from the record that had Ward raised his contentions regarding the deadline for filing objections to discharge prior to July 29, 2014 (the deadline for filing objections in the notice sent by the Bankruptcy Clerk for the Eastern District), the judgment creditors could have filed a motion for extension of time, and the Bankruptcy Court would have granted such a motion and would have authorized additional extensions, all of which would clearly have been permitted by the Bankruptcy Rules.

On April 30, 2015, Yaquinto and the judgment creditors (collectively, Objectors) filed a complaint (Complaint) seeking denial of Ward's discharge under, *inter alia*, 11 U.S.C. § 727(a).[2]  After holding a trial on the merits of the Complaint, the Bankruptcy Court issued an opinion (1) affirming its conclusion that the initial Motion for an Extension and the Complaint were timely, and (2) denying Ward's discharge under 11 U.S.C. § 727(a)(4)(A) and (a)(5).[3]  Ward appealed the Bankruptcy Court's decision to the United States District Court for the Northern District of Texas, which affirmed.[4]  This appeal followed.

## II

We conclude that the Bankruptcy Court had the equitable power emanating from 11 U.S.C. § 105(a) to correct any error it may have committed in changing the date of the first creditors' meeting after the case was

---

[2] *Frank v. Ward* (*In re Ward*), No. 14-32939, 2017 WL 377947, at *3 (Bankr. N.D. Tex. Jan. 26, 2017), *aff'd sub nom. Ward v. Yaquinto* (*In re Ward*), 585 B.R. 806 (N.D. Tex. 2018).

[3] *Id.* at *3-5, *19, *27.

[4] *Ward v. Yaquinto*, 585 B.R. at 809, 823.

transferred out of the Eastern District. The Objectors reasonably relied on the issuance by the Northern District Bankruptcy Court's Clerk of a second, later date for the § 341(a) initial creditors' meeting and a corresponding new, later deadline for filing objections to discharge.

We begin with an overview of Rules 4004 and 4007. Rule 4004(a) provides that in cases such as this, "complaint[s] . . . objecting to the debtor's discharge shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)."[5] Bankruptcy courts can extend the deadline for objecting to discharge "[o]n motion of any party in interest" if the motion is "filed before the time [to object to discharge] has expired."[6] Bankruptcy courts are required to "forthwith grant the discharge" if the deadline for objecting expires and no complaints or motions for extension of time are pending.[7] Rule 4007(c) imposes the same restrictions on complaints to determine the dischargeability of certain debts.[8] Both Rules 4004(a) and 4007(c) require a bankruptcy court to give creditors notice of the deadline for filing objections.[9]

Rule 9006(b) addresses the extent to which bankruptcy courts may extend the deadlines established under the Bankruptcy Rules. Generally, bankruptcy courts may extend upcoming deadlines "for cause shown" and may excuse noncompliance with past deadlines "where the failure to act was the result of excusable neglect."[10] However, Rule 9006(b)(3) provides that this general rule is inapplicable to certain deadlines, including those established by Rule 4004(a) and Rule 4007(c). Instead, bankruptcy courts "may enlarge the

---

[5] FED. R. BANKR. P. 4004(a).
[6] *Id.* 4004(b)(1).
[7] *Id.* 4004(c)(1).
[8] *Id.* 4007(c).
[9] *Id.* 4004(a), 4007(c).
[10] *Id.* 9006(b)(1).

time for taking action under Rules . . . 4004(a) [and] 4007(c) . . . only to the extent and under the conditions stated in those rules."[11]

Our court has held that Rules 4004 and 4007 are strictly construed.[12] "Consequently, any exceptions to discharge must be filed within [their] strictly enforced time limit[s]."[13] The Rules "reflect[] the overall goal of the bankruptcy process to provide individual debtors a fresh start."[14] Although Rules 4004(a), 4007(c), and 9006(b) "place[] a heavy burden on the creditor to protect his [or her] rights," they embody a judgment that the burden they impose is justified.[15]

Bankruptcy courts have the authority under 11 U.S.C. § 105 to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code.[16] "From this section emanate the general equitable powers of bankruptcy courts."[17] The powers afforded to bankruptcy courts pursuant to § 105, however, are not unlimited. For example, "a bankruptcy court may not contravene specific statutory provisions" pursuant to its § 105 powers.[18] Nor does § 105 permit "the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code."[19]

In the present case, the Bankruptcy Court moved the date of the first

---

[11] *Id.* 9006(b)(3).

[12] *See Scarbrough v. Purser* (*In re Scarbrough*), 836 F.3d 447, 452 (5th Cir. 2016) ("The deadline for filing a dischargeability complaint is inflexible." (citing *FDIC v. Meyer* (*In re Meyer*), 120 F.3d 66, 68 (7th Cir. 1997))).

[13] *Ichinose v. Homer Nat'l Bank* (*In re Ichinose*), 946 F.2d 1169, 1172-73 (5th Cir. 1991).

[14] *Id.* at 1172; *see also State Bank & Tr., N.A. v. Dunlap* (*In re Dunlap*), 217 F.3d 311, 315 (5th Cir. 2000) ("[T]his fixed, relatively short limitation period enables the debtor and creditors to make better-informed decisions early in the . . . proceedings." (quoting *Neeley v. Murchison*, 815 F.2d 345, 346-47 (5th Cir. 1987))).

[15] *Neeley*, 815 F.2d at 347.

[16] 11 U.S.C. § 105(a).

[17] *Omni Mfg., Inc. v. Smith* (*In re Smith*), 21 F.3d 660, 665 (5th Cir. 1994).

[18] *Law v. Siegel*, 571 U.S. 415, 421 (2014).

[19] *Id.* (quoting 2 COLLIER ON BANKRUPTCY ¶ 105.01[2], at 105-06 (16th ed. 2013)).

creditors' meeting and, consequently, the deadline to file objections. Assuming, without deciding, that this was contrary to the letter of Rule 4004 even when a case has been transferred to another district, the parties were justified in relying on the Bankruptcy Court's actions. Neither party brought the matter to the Bankruptcy Court's attention prior to the original deadline for filing objections to discharge. Had they done so, the Bankruptcy Court would have been authorized under the Rules to extend the time for filing an objection to discharge. Under § 105, the Bankruptcy Court was empowered to craft an appropriate solution to correct its own error, if any.

We have previously recognized that  bankruptcy courts "cannot use their equity powers under [§ 105] to fashion substantive rights and remedies not contained in the Bankruptcy Code or Rules."[20]  But the facts of this case are materially distinguishable from one in which a court sua sponte extends the sixty-day deadlines in Rules 4004(a) and 4007(c) by claiming to use its inherent equitable authority.  Section 105 does not "allow [a] bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code."[21]  Here, however, assuming the Bankruptcy Court issued an erroneous order, it corrected its own error in the only way it could—by deeming the Objectors' motion timely.  This action was permissible under § 105's grant of equitable authority.  After all, "[t]he equitable power given to courts by . . . § 105(a) would be meaningless if courts were unable to correct their own mistakes."[22]

Our sister circuits that have considered similar fact patterns have come

---

[20] *In re Smith*, 21 F.3d at 666.

[21] *Siegel*, 571 U.S. at 421 (quoting 2 COLLIER ON BANKRUPTCY, *supra* note 19, ¶ 105.01[2], at 105-06); *see, e.g.*, *In re Smith*, 21 F.3d at 666 (holding that § 105(a) does not authorize a court to "extend the deadline for filing a proof of claim in the [debtor's] reorganization case" in direct contravention of Rule 9006's requirements).

[22] *Anwiler v. Patchett* (*In re Anwiler*), 958 F.2d 925, 929 (9th Cir. 1992), *as amended on denial of reh'g* (Apr. 8, 1992).

to the same conclusion as we do today.[23]  *In re Themy* serves as one example.[24] There, the bankruptcy court sent a notice setting forth the date for the initial creditors' meeting and the date for filing complaints.  The creditors' meeting occurred but was continued to allow the debtor's attorney to file amended schedules.  The bankruptcy court then sent another notice informing the creditors of the continuance of the initial creditors' meeting and setting a new, later date as the deadline for filing objections.  A creditor filed an objection after the initial deadline had expired but before the new one.  The bankruptcy court found the creditor's complaint timely.[25]  The Tenth Circuit affirmed, concluding that the bankruptcy court's actions were permitted under § 105.[26] That court reasoned: "The bankruptcy court's acceptance of [the] complaint . . . was not a sua sponte extension of the deadline, but was an exercise of the court's authority to correct its own errors.  A court has the inherent equitable power to correct its own mistakes."[27]

Ward contends that a bankruptcy court is powerless to remedy its error in issuing a second, later notice of the deadline for objecting to a discharge. First, citing cases such as *State Bank & Trust, N.A. v. Dunlap*,[28] he contends that Rules 4004 and 4007 are claims-processing rules not subject to equitable tolling.  Even assuming Rules 4004 and 4007 are claims-processing rules not subject to equitable tolling, this premise in no way undermines a bankruptcy court's equitable power to craft solutions in response to its own missteps. Governing law may preclude a bankruptcy court from excusing non-compliance

---

[23] *See, e.g.*, *Moss v. Block* (*In re Moss*), 289 F.3d 540, 542 (8th Cir. 2002); *Themy v. Yu* (*In re Themy*), 6 F.3d 688, 689-90 (10th Cir. 1993); *In re Anwiler*, 958 F.2d at 928-29.

[24] 6 F.3d at 689-90.

[25] *Id.* at 689.

[26] *Id.* at 690.

[27] *Id.* at 689.

[28] 217 F.3d 311 (5th Cir. 2000).

No. 18-10469

with Rules 4004 and 4007. Nevertheless, for the reasons previously articulated, a bankruptcy court retains the authority to correct its own actions in circumstances such as this one.

Second, Ward contends the Objectors were not justified in relying on the Bankruptcy Court's mistake. He argues the Objectors "had a duty to protect their rights under [Rules 4004 and 4007, a duty that] included making a diligent effort to ascertain whether the deadlines contained in the [Northern District] Notice were valid or erroneous under the applicable rules." Ward contends that our holding in *Neeley v. Murchison*[29] supports his position. But Ward fails to recognize that our *Neeley* holding does not encompass the situation here, when instead of providing no information on deadlines, the Northern District Bankruptcy Clerk "gave an affirmative but erroneous notice of a bar date upon which the creditor might reasonably have relied."[30]

Ward cites no authority that holds a bankruptcy court cannot extend the deadline in circumstances such as those present here, so even had the creditors "diligently" researched the issue, they would not have been put on notice that there was a potential error. Under the present circumstances, the litigants could rely on the bankruptcy judge's interpretation and application of the Rules.[31] The Bankruptcy Court was entitled to correct its own error when confronted with its own mistake.

That a bankruptcy court has the equitable authority to correct its own mistakes is hardly a novel concept. Although § 105 does not "constitute a

---

[29] *See* 815 F.2d 345, 346-47 (5th Cir. 1987) (dismissing a creditor's objection to dischargeability as untimely when the bankruptcy clerk left blank the Rule 4007(c) deadline for objections on the court's notice of the initial creditors' meeting and when the creditor was told no date had been set when he inquired about the deadline).

[30] *Id.* at 347 n.5 (citing *Francis v. Riso (In re Riso)*, 57 B.R. 789 (D.N.H. 1986)).

[31] *In re Themy*, 6 F.3d at 690.

roving commission to do equity,"[32] courts are not infallible.  As one of our sister circuits expressed, "[i]t would be very harsh indeed to deny equitable relief in cases where the delay in filing is not due to the fault of either party."[33] Presented with that case, we hold that the Objectors' Motion for an Extension and their Complaint were timely.

## III

We next consider whether the Bankruptcy Court correctly denied Ward's discharge under 11 U.S.C. § 727(a)(4)(A).  Section 727(a)(4)(A) provides that a "court shall grant the debtor a discharge[] unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."[34]  The Bankruptcy Court denied Ward a discharge after finding that he made a false oath or account regarding (1) his income, (2) his wife's income, (3) two automobiles, (4) a trust that he established for his family, and (5) the operating dates of two entities with which he was associated, Lloyd Ward, P.C. and VL Capital.[35]

On appeal, Ward contends that his representations concerning his wife's income were not false and that his representations regarding his income, his wife's income, and Lloyd Ward, P.C. were either immaterial, not made with fraudulent intent, or both.  Ward challenges only some of the false oaths or accounts identified by the Bankruptcy Court.[36]  The Bankruptcy Court's

---

[32] *Chiasson v. J. Louis Matherne & Assocs.* (*In re Oxford Mgmt., Inc.*), 4 F.3d 1329, 1334 (5th Cir. 1993) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

[33] *Anwiler v. Patchett* (*In re Anwiler*), 958 F.2d 925, 929 (9th Cir. 1992), *as amended on denial of reh'g* (Apr. 8, 1992).

[34] 11 U.S.C. § 727(a)(4)(A).

[35] *Frank v. Ward* (*In re Ward*), No. 14-32939, 2017 WL 377947, at *12-26 (Bankr. N.D. Tex. Jan. 26, 2017), *aff'd sub nom. Ward v. Yaquinto* (*In re Ward*), 585 B.R. 806 (N.D. Tex. 2018).

[36] *Ward v. Yaquinto*, 585 B.R. at 821.  Of the several false oaths or accounts identified by the Bankruptcy Court, Ward only adequately challenged a few of them before the district court.  *See id.*  To the extent parts of his brief in this court could be read as challenging all of the Bankruptcy Court's findings, Ward waived these arguments by failing to adequately brief

judgment sufficiently rests on the unchallenged findings.[37] We thus affirm the Bankruptcy Court's denial of Ward's discharge under 11 U.S.C. § 727(a)(4)(A).

## IV

Although the Bankruptcy Court needed to establish only one ground under 11 U.S.C. § 727(a) to deny Ward's discharge, we recognize that the court was correct in finding that Ward's discharge could also be denied under § 727(a)(5).[38] Section 727(a)(5) permits a bankruptcy court to deny a debtor's discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge[,] . . . any loss of assets or deficiency of assets to meet the debtor's liabilities."[39]

The Objectors contended below that Ward was not entitled to a discharge under § 727(a)(5) because he could not sufficiently account for compensation he received as an officer of Lloyd Ward Group, P.C. (LWG).[40] According to LWG's 2010 tax return, LWG paid its officers $1,325,000 in compensation that year. At trial, Ward initially "testified that he was the sole officer of [LWG]."[41] "When questioned about this compensation, Ward testified that his prior testimony that he was the sole officer of [LWG] was not accurate and that

them here and below. *See Monteon-Camargo v. Barr*, 918 F.3d 423, 428 (5th Cir. 2019), *as revised* (Apr. 26, 2019); *Bradley v. Ingalls* (*In re Bradley*), 501 F.3d 421, 433 (5th Cir. 2007).

[37] *See* 11 U.S.C. § 727(a)(4)(A) ("[Bankruptcy] court[s] shall grant the debtor a discharge[] unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made *a* false oath or account." (emphasis added)); *Robinson v. Worley*, 849 F.3d 577, 587 (4th Cir. 2017) (noting that "all that the provision requires for a denial of discharge is a single false account or oath" (citing *Schreiber v. Emerson* (*In re Emerson*), 244 B.R. 1, 28 (Bankr. D.N.H. 1999))); *Smith v. Grondin* (*In re Grondin*), 232 B.R. 274, 277 (B.A.P. 1st Cir. 1999) ("According to the plain language of § 727(a)(4)(A), all that is required for a denial of discharge is a single 'false oath or account.'").

[38] *See McClendon v. DeVoll* (*In re DeVoll*), 266 B.R. 81, 98 (Bankr. N.D. Tex. 2001) ("If any one ground for a denial of discharge is established, the Court does not need to decide the propriety of any of the other grounds.").

[39] 11 U.S.C. § 727(a)(5).

[40] *Frank v. Ward*, 2017 WL 377947, at *26-27.

[41] *Id.* at *26.

[LWG] had two additional officers, a CFO and a CEO."[42]   These individuals were each allegedly paid $200,000 in 2010, thereby suggesting Ward received "at least, $900,000 in compensation as an officer of [LWG]" in that year.[43]

In an attempt to account for this money, "Ward testified that a third party (Mr. Miles) had been 'misallocating funds' in relation to [LWG]."[44] According to Ward, Mr. Miles "had been showing expenses that didn't exist, and taking money out of the company under the payroll."[45]   Ward further contended that "these actions resulted in a lawsuit and a judgment against Mr. Miles [and others]" but that the judgment was ultimately "uncollectible."[46] Beyond this explanation, the Bankruptcy Court noted, "Ward gave no explanation of where the $900,000 of compensation the tax return shows he was paid went."[47]

The Bankruptcy Court ultimately found Ward's explanation for the $900,000 in compensation wanting.  First, the court concluded that Ward's testimony concerning the compensation "was self-serving, not credible, or both."[48]  Moreover, "Ward's testimony often changed based upon the situation [with which] he was presented."[49]  Second, the court found Ward's version of events implausible.  According to the court, it made little sense to classify the $900,000 at issue as compensation for officers.  If the money had been "stolen," it made little sense to consider the money "compensation."  Nor, if Mr. Miles did take the money, could LWG classify his receipt of the money as "officer compensation," as "nothing in the record indicat[ed] that Mr. Miles was an

---

[42] *Id.*
[43] *Id.*
[44] *Id.* at *27.
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*

No. 18-10469

officer of [LWG]."[50]   According to the court, "[i]t is simply not plausible that Ward (a lawyer and sophisticated businessman) would permit an entity he controlled to file a tax return showing substantial compensation to him if, in fact, that money was not paid to him."[51]   The court thus denied Ward's discharge pursuant to § 727(a)(5).

On appeal, Ward argues the Bankruptcy Court clearly erred when it denied his discharge pursuant to § 727(a)(5).[52]   First, he contends he was not "the sole officer of [LWG]" in 2010.   Second, he contends that because compensation includes more than simply an officer's wage, the court "erred in inferring that 'compensation' as identified on a company tax return equates to 'assets' for purposes of [§ 727(a)(5)]."

As to Ward's first argument, Ward's testimony at trial sufficiently confirms the Bankruptcy Court's conclusion.   Ward testified he was one of three LWG officers; he confirmed that LWG's 2010 tax return reflected $1,325,000 in officer compensation; and he confirmed that such amount included $400,000 paid to other LWG officers.   The court was justified in crediting these assertions.   As to Ward's second argument, "no facts suggest . . . the figure reflected in the 2010 tax return was anything other than a direct payment from the company to [its officers]."[53]   Thus, the Bankruptcy Court did not clearly err when it concluded Ward received at least $900,000 in compensation in 2010.   We thus affirm the denial of Ward's discharge pursuant

---

[50] *Id.*

[51] *Id.*

[52] *See Cadle Co. v. Duncan* (*In re Duncan*), 562 F.3d 688, 694 (5th Cir. 2009) (noting that courts of appeals "apply the same standard of review as the district court, reviewing the bankruptcy court's findings of fact for clear error" (citing *Hickman v. Texas* (*In re Hickman*), 260 F.3d 400, 401 (5th Cir. 2001))); *see also Robertson v. Dennis* (*In re Dennis*), 330 F.3d 696, 701 (5th Cir. 2003) ("A finding of fact is clearly erroneous only if 'on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed.'" (quoting *Hibernia Nat'l Bank v. Perez* (*In re Perez*), 954 F.2d 1026, 1027 (5th Cir. 1992))).

[53] *Ward v. Yaquinto* (*In re Ward*), 585 B.R. 806, 823 (N.D. Tex. 2018).

No. 18-10469

to § 727(a)(5).

*     *     *

For the foregoing reasons, the district court's judgment affirming the Bankruptcy Court is AFFIRMED.